```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

EASTMAN KODAK COMPANY,

                          Plaintiff,                  02-CV-6564T

            v.                           **DECISION**
                                                   **and ORDER**

AGFA-GEVAERT N.V. and AGFA CORP.,

                          Defendants.

_____

## INTRODUCTION

Plaintiff Eastman Kodak Company, ("Kodak"), brings this action against defendant Agfa-Gevaert, N.V. and Agfa Corporation (collectively "Agfa"), claiming that the defendants, by manufacturing, distributing and selling certain radiographic films, have infringed upon seven patents assigned to Kodak. By motion dated May 27, 2005, Agfa moves for partial summary judgment with respect to certain of the accused products contending that the products do not literally infringe three of the seven Kodak patents at issue, (U.S. Patents 4,425,425 (the '425 patent); 4,425,426, (the '426 patent) and 4,439,520 (the '520 patent)) and, as a matter of law, can not be found to infringe those patents under the doctrine of equivalents. Specifically, Agfa contends that because certain claims of the '425, '426, and '520 patents contain specific numerical limitations, the doctrine of equivalents may not be invoked to expand the scope of those claims to cover accused products which fall outside of the prescribed numerical ranges or limitations.

Kodak opposes defendant's motion, and contends that the use of precise numerical limitations in the claims does not, as a matter of law, preclude application of the doctrine of equivalents to those claims. Instead, Kodak argues that the question of whether or not Agfa's products infringe the '425, '426, or '520 patents under the doctrine of equivalents is a question of fact that must be submitted to the trier of fact.

For the reasons set forth below, I find that Kodak is not precluded as a matter of law from asserting claims of infringement under the doctrine of equivalents with respect to the '425, '426, and '520 patents, and therefore deny defendant's motion for partial summary judgment.

## BACKGROUND

The patents at issue in this motion are U.S. Patents 4,425,425 (the '425 patent); 4,425,426, (the '426 patent) and 4,439,520 (the '520 patent) hereinafter referred to as the "tabular grain" patents. Tabular grains, (also known as T-grains), are tiny light sensitive crystals shaped like table-tops that are embedded in the emulsion of radiographic film. The T-grain patents purportedly disclose advancements in the sizes and shapes of the tabular grains. Kodak contends that because of the physical attributes of its grains, the grains capture more light at a lower cost than grains in other films, and capture that light more accurately, resulting in clearer radiographic images.

The '425, '426, and '520 patents disclose the use of T-grains, which are of a particular size and shape, and which have a particular aspect ratio. Specifically, in addition to other elements, the '425 patent discloses the use of T-grains having a thickness of less than .3 micron, a diameter of at least .6 micron, and an average aspect ratio that is greater than 8:1. The "aspect ratio" of a T-grain is the ratio between the T-grain's diameter to its thickness. Similarly, the '520 patent discloses the use of T-grains having a thickness of less than .3 micron, a diameter of at least .6 micron, and an average aspect ratio of 8:1

The '426 patent discloses, <u>inter alia</u>, an emulsion wherein T-grains having a thickness of less than .2 micron and an average aspect ratio of between 5:1 and 8:1 account for at least 50 percent of the total projected area of the film. The term "projected area" refers to the area of film receives light to form an image.

Agfa moves for summary judgment seeking a declaration that five of its products, (Agfa CP-BU; Curfix Opthos H HS/LC; Sterling OV-G; Sterling UV-Ci; and Sterling Ultravision G) do not infringe the '520 and '425 patents. Agfa contends that these products do not literally infringe the '520 and '425 patents because according to Kodak's own analysis, the products do not utilize T-grains with an average aspect ratio of greater than 8:1. Rather, Agfa contends that Kodak's data demonstrates that the aspect ratio of Agfa's T-grains range between 7.03:1 to 7.50:1. Moreover, Agfa contends that Kodak may not assert an infringement claim pursuant to the doctrine of equivalents because the written claims specifically

require T-grains with an average aspect ratio greater than 8:1, and therefore T-grains with a smaller aspect ratio may not be considered equivalent. Kodak contends that it is not precluded from asserting infringement claims under the doctrine of equivalents, and that the question of whether or not T-grains with aspect ratios ranging from 7.03:1 to 7.50:1 infringe the '425 and '520 patents is a question of fact.

Agfa also seeks a declaration that 16 of its products do not infringe the '426 patent. Specifically, with respect to those 16 products, Agfa contends that only 3 percent of the T-grains measuring less than .2 micron in thickness make up the total projected area, and therefore those products do not meet the requirement of the '426 patent that more than 50 percent of the total projected area be populated by T-grains measuring less than .2 micron in thickness. Kodak counters that with respect to the 16 products at issue, those products utilize T-grains with a thickness measuring slightly more than .2 micron that make up more than 50 percent of the total projected area, and therefore may be found to infringe under the doctrine of equivalents.

## **DISCUSSION**

I.   The Doctrine of Equivalents

A.   Generally

The patent-law doctrine of equivalents was first announced by the Supreme Court in 1854 in Winans v. Denmead 56 U.S. (15 How.) 330. In Winans, the court held that the "scope of a patent is not

limited to its literal terms, but instead embraces all equivalents to the claims described." Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 535 U.S. 722, 732 (2002)(citing Winans, 56 U.S. at 347). Since 1854, courts have struggled to determine what constitutes an "equivalent" to a patent claim. Ninety six years after Winans was decided, the Supreme Court held that when determining whether or not an accused product is "equivalent" to a patented invention, courts must determine whether or not the accused product "performs substantially the same function [as the patented invention] in substantially the same way to obtain the same result." Graver Tank & Manufacturing Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 608 (1950)). More recently, the Supreme Court has clarified that the doctrine of equivalents test is to be applied to the individual claims of a patent, not to the patented invention as a whole. Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 520 U.S. 17, 29 (1997).

There are three significant limitations concerning the range of equivalents that may be afforded to a patent claim. First, if the claim language itself, or the specification, specifically preclude the use of certain structures, or if the use of those structures would be "inconsistent with the language of the claim", then those structures may not be deemed equivalents to the claimed structure. Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1317 (Fed. Cir. 1998). Second, if the patentee specifically disclaimed certain structures during the prosecution or reexamination of the patent, the patentee may not then assert

those structures as equivalents for purposes of alleging infringement. Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc., 170 F.3d 1373, 1376 (Fed. Cir. 1999) ("Prosecution history estoppel precludes a patentee from obtaining under the doctrine of equivalents coverage of subject matter that has been relinquished during the prosecution of its patent application.")  Finally, the range of equivalents afforded a patent claim may be circumscribed by prior art.  Where an alleged equivalent to a patented claim exists in prior art, and therefore could not have been patented, the patentee is not be entitled to a range of equivalents that would encompass that prior art. Tate Access Floors v. Interface Architectural Res., 279 F.3d 1357, 1366-67 (Fed. Cir. 2002)(no infringement under doctrine of equivalents where alleged infringer is practicing prior art).

   B.  Defendant has failed to establish that Kodak is not entitled to assert claims of infringement under the doctrine of equivalents.

   1.  The '425 and '520 patents

Agfa contends that with respect to the aspect ratio requirements set forth in the '425 and '520 patents, there is no range of equivalents that can be afforded to those claim elements because the claim language excludes all ratios that are not "greater than" 8:1.  Agfa contends that because Kodak precisely defined the aspect ratio as being greater than 8:1, it can not seek a range of equivalents that falls below the 8:1 ratio, as such a range would vitiate the claim as written.

I find, however, that with respect to the aspect ratio issue, Kodak is not precluded from asserting a claim for infringement under the doctrine of equivalents. Despite the literal language of the patent requiring that the aspect ratio of certain T-grains be "greater than" 8:1, there is no language in the patent itself that suggests that the aspect ratio <u>must</u> be limited to a ratio greater than 8:1. Similarly, there is no evidence in the prosecution history that Kodak disclaimed aspect ratios that were smaller than 8:1. Finally, there is no evidence in this record suggesting that the inventions disclosed in the '425 and '520 patents would not have been patentable had Kodak claimed aspect ratios smaller than 8:1.

In many respects, this case is similar to the Supreme Court case of <u>Warner-Jenkinson v. Hilton Davis Chemical Co.</u>, 520 U.S. 17. In that case, the Court held that while a numerical range of 6.0 to 9.0 (referring to ph values) was limited at the top end because the patentee specifically disclaimed coverage for ranges exceeding 9.0, the patentee could be entitled to a range of equivalents extending below 6.0: provided that the patentee did not disclaim such a range and no prior art precluded such a range. <u>Warner-Jenkinson</u>, 520 U.S. at 32-34. Based on <u>Warner-Jenkinson</u>, it is clear that contrary to Agfa's position in this case, there is no bright line rule against allowing a patent holder to assert a doctrine of equivalents infringement claim against an alleged infringer even where the patentee has used precise numerical terms in defining the literal meets and bounds of the claimed invention. The Federal

Circuit Court of Appeals affirmed this conclusion in <u>Abbott Labs. v. Dey, L.P.</u>, when it held that "[t]he fact that a claim recites numeric ranges does not, by itself, preclude [plaintiffs] from relying on the doctrine of equivalents." 287 F.3d 1097, 1107-08 (Fed. Cir. 2002).

Accordingly, despite the use in the '425 and '520 patents of precise numerical terms in describing the required average aspect ratio, absent a valid reason for limiting the range of those terms, Kodak may pursue claims of infringement against alleged infringers whose products, while not falling within the literal terms of the claim, come insubstantially close. In this case, whether or not aspect ratios ranging from 7.03:1 to 7.50:1 are "equivalent" to the aspect ratios claimed in the '425 and '426 patents is a question of fact to be decided by the trier of fact. <u>Golen Blount, Inc. v. Robert H. Peterson Co.</u>, 365 F.3d 1054, 1058 (Fed. Cir.2004)(infringement, whether literal or under the doctrine of equivalents, is a question of fact). I therefore deny Agfa's motion for partial summary judgment with respect to the '425 and '520 patents.

2.  The '426 patent

The '426 patent claims in relevant part that T-grains with a thickness of less than .2 micron must comprise at least 50 percent of the total projected area of the emulsion. Agfa seeks a declaration that Kodak, as a matter of law, is precluded from asserting as equivalents to that claim element: (1) structures in

which less than 50 percent of the total projected area is comprised of T-grains having a thickness of less than .2 micron in thickness; and (2) structures in which at least 50 percent of the total projected area is comprised of T-grains that are larger than .2 micron in thickness.  Agfa argues that Kodak is precluded from such equivalents because the claims contain precise numerical terms, and thus are not entitled to any range of equivalents, and because Kodak, during the prosecution history of the '426 patent, disclaimed structures in which less than 50 percent of the total projected are is comprised of T-grains with a thickness of less than .2 micron.  Specifically, Agfa contends that Kodak renounced such a structure in order to obtain the patent over prior art, in which 47.2 percent of the total projected area was comprised of grains measuring less than .2 micron in thickness.

As stated above, there is no absolute prohibition on affording a patent claim a range of equivalents despite the use of precise numerical terms in the claim.  Rather, the range of equivalents may be narrowed, or completely extinguished only where the patentee has used language specifically prohibiting certain structures that would otherwise be equivalent; where the patentee renounced certain structures that would otherwise be equivalent in order to obtain the patent; or where the equivalency is disclosed in the prior art.

In this case, I find that there is no bar to Kodak's assertion of a structure comprised of T-grains measuring .2 micron or more in thickness comprising more than 50 percent of the total projected area of the emulsion.  There is no intrinsic bar in the claims or

specification to such a range of equivalents, and Kodak did not disclaim such an equivalent during patent prosecution or reexamination. Moreover, there is no evidence in the record to suggest that such an equivalency range is barred by prior art.

With respect to the limitation that at least 50 percent of the total projected are be comprised of T-grains with a thickness of less than .2 micron, I find that Kodak may not assert as an equivalent a structure in which less than 50 percent of the total projected area is comprised of T-grains with a thickness of less than .2 micron. On reexamination, Kodak distinguished its patent against prior art in which less than 50 percent of the total projected area (specifically 47.2 percent) was comprised of T-grains with a thickness of less than .2 micron. Specifically, in distinguishing the prior art, (which Kodak assumed for the sake of argument disclosed an emulsion in which 47.2 percent of the total projected are was comprised of T-grains measuring less than .2 micron), Kodak asserted that "not a single emulsion has been identified that satisfies the criteria of containing tabular grains of a thickness less than .2 micron having an average aspect ratio in the range of from 5:1 to 8:1 and accounting for at least 50 percent of the total projected area." I find that this distinction between the '426 patent and the prior art constitutes a surrender, in that a competitor reading the prosecution history of the '426 would reasonably believe that Kodak had in fact surrendered structures in which less than 50 percent of the total projected are comprised of T-grains with a thickness of less than .2 micron. <u>See</u>

Pharmacia & Upjohn Co., 170 F.3d at 1377 (Fed. Cir. 1999)(test for determining whether or not an applicant surrenders subject matter during prosecution or reexamination is "whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter.")  The surrender with respect to the "at least 50 percent requirement", however, does not prevent Kodak from asserting infringement claims against products wherein at least 50 percent of the total projected are is comprised of t-grains that are slightly larger than .2 micron.

   II.   Judicial Estoppel

   Agfa contends that Kodak is judicially estopped from asserting an infringement claim with respect to the accused product Cronex 10T because of statements made by Kodak attorneys in the course of defending a prior motion for summary judgment brought by Agfa on the issue of laches.  I find that the statements made by Kodak's counsel do not bar it from asserting an infringement claim against Cronex 10T, and therefore deny Agfa's motion based on judicial estoppel.

CONCLUSION

   For the reasons set forth above, I deny Agfa's motion for partial summary judgment.  Kodak may assert infringement claims under the doctrine of equivalents with respect to the aspect ratios claimed in the '425 and 520 patents.  With respect to the '426 patent, Kodak may assert a claim for infringement claiming that T-

grains with a thickness slightly larger than .2 micron covering more than 50 percent of the total projected area of the emulsion infringe the '426 patent under the doctrine of equivalents. Kodak may not, however, (with respect to the '426 patent) assert as an equivalent structure, an emulsion in which less than 50 percent of the total projected area is populated by T-grains with a thickness of less than .2 micron. Finally, I deny Agfa's motion for summary judgment with respect to Cronex 10T.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

    MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
          June 28, 2005