```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

EASTMAN KODAK COMPANY,

                        Plaintiff,            02-CV-6564T

      v.                                    **DECISION**
                                                **and ORDER**

AGFA-GEVAERT N.V. and AGFA CORP.,

                        Defendants.

_____

### INTRODUCTION

Plaintiff Eastman Kodak Company, ("Kodak"), brings this action against defendant Agfa-Gevaert, N.V. and Agfa Corporation (collectively "Agfa"), claiming that the defendants, by manufacturing, distributing and selling certain radiographic films, have infringed upon seven patents assigned to Kodak.

Before the court are four motions. By motion dated April 11, 2006, Agfa moves for partial summary judgment against Kodak with respect to the accused product Cronex 10TL on grounds that Kodak failed to provide Agfa or its predecessors with notice of infringement prior to the expiration of the patents that were allegedly infringed. (Docket item no. 185)  Agfa contends that because Kodak failed to provide notice of infringement with respect to Cronex 10TL, Kodak may not recover damages for alleged infringement related to that product.

1

By a second motion dated April 11, 2006, Agfa moves for partial summary judgment on grounds that Kodak unreasonably delayed bringing this action despite believing that certain of Agfa's products infringed upon Kodak's patents. (Docket item no. 187) Agfa argues that because of Kodak's delay in bringing suit, Kodak is barred by the doctrine of laches from recovering its entire measure of alleged damages with respect to Agfa's Cronex 10T and Cronex 10TL products.

Kodak opposes Agfa's motions, and by motions dated June 14, 2006, cross moves for summary judgment in its favor with respect to the issue of notice of infringement, and for attorneys' fees with respect to defendants' motion under the laches doctrine. (Docket item nos. 204, 205)

## **BACKGROUND**

There are seven patents at issue in this case, all of which are assigned to Kodak. The patents generally fall into one of two categories: the "crossover patents" and the "tabular grain patents." The crossover patents disclose film emulsion technology which limits the amount of light that can "crossover" from one side of radiographic film to the other side. Limiting the amount of light that crosses-over from one side to the other helps prevent distortion, and allows for a sharper image.

Tabular grains, as described in the tabular grain patents (also referred to as the "t-grain" patents) are tiny light sensitive crystals shaped like table-tops that are embedded in the emulsion of radiographic film. The t-grain patents disclose advancements in the sizes and shapes of the tabular grains. Kodak contends that because of the sizes and shapes of its grains, the grains capture more light than grains in other films, and capture that light more accurately, resulting in clearer radiographic images.

There are four crossover patents at issue in this case: U.S. Patents 4,803,150; (the '150 patent); 4,994,355, (the '355 patent); 4,997,750, (the '750 patent); and 5,108,881 (the '881 patent).

There are three tabular grain patents at issue: U.S. Patents 4,425,425 (the '425 patent); 4,425,426, (the '426 patent) and 4,439,520 (the '520 patent).

In September 1995, Kodak informed Dupont that one of its products, Cronex 10T, infringed upon Kodak's '425 and '426 (t-grain) patents. The parties met in November, 1995, at which time Dupont acknowledged Kodak's patents; explained that any prior infringement of those patents was unintentional; and vowed to quickly alter the formulation of the film so as not to infringe on Kodak's patents. Kodak subsequently tested DuPont's Cronex 10T, and concluded that the product no longer infringed on Kodak's '425 and '426 patents. At that time, Kodak did not raise any

3

infringement claims regarding the other T-grain patent in suit, the '520 patent.

In April 1996, DuPont spun-off a company named Sterling which became an independent company. Three years later, in 1999, Agfa acquired Sterling. In November, 2000, Kodak and Agfa representatives met in Rochester, N.Y., to discuss patent and licensing issues. The parties, however, were unable to negotiate a licensing agreement. On October 31, 2002, Kodak filed the instant case, alleging that Agfa's products infringed on one or more of Kodak's t-grain and crossover patents in suit.

## **DISCUSSION**

I.  <u>Notice</u>

A.  <u>Legal Standards regarding Marking and Notice</u>

35 U.S.C. § 287(a) essentially provides that where the manufacturer or seller of a patented article fails to mark the article or its packaging with a notice that the item is patented, the patentee shall not be entitled to damages for infringement absent "proof that the infringer was notified of the infringement and continued to infringe thereafter . . . ." The section further provides that where the patentee has not marked a patented article, damages for infringement are limited to the period following the date on which the infringer received actual notice of the infringement. 35 U.S.C. § 287(a).

Generally, the question of whether or not a patentee has complied with 35 U.S.C. § 287(a), either by marking its patented product or providing actual notice infringement to an accused infringer is a question of fact. <u>Gart v. Logitech</u>, 254 F.3d 1334, 1339 (Fed. Cir. 2001)(citing <u>Maxwell v. J.Baker, Inc.</u>, 86 F.3d 1098, 1111 (Fed. Cir. 1996). However, where there are no material facts in dispute, and "no reasonable jury could find that the patentee either has or has not provided actual notice to the particular defendants by informing them of [its] patent and of [defendant's] infringement of it" the issue of actual notice may be decided on a motion for summary judgment. <u>Gart</u>, 254 F.3d at 1339.

    B.    <u>Questions of Fact exist as to whether or not notice of infringement with respect to Cronex 10T was effective as to Cronex 10TL</u>.

In the instant case, there is no dispute that Kodak did not mark any of its products with a notice that those products were patented under one or more of the patents in suit. Plaintiff further admits that for purposes of calculating damages, the damages period commenced when Agfa, or its predecessors, received actual notice of alleged infringement of the patents in suit. A dispute exists, however, as to when Agfa or its predecessors received actual notice that Cronex 10TL infringed upon the patents in suit. Agfa contends that prior to the filing of the instant

5

action, it never received notice from Kodak that Cronex 10TL infringed upon Kodak's patents, and therefore, Agfa may not be held liable for damages with respect to sales of Cronex 10TL. Kodak contends that its 1995 notice of infringement to DuPont with respect to Cronex 10T also constituted notice as to Cronex 10TL, and therefore Agfa may be held liable for all applicable damages with respect to sales of Cronex 10TL

In this Court's July 2, 2004 Decision and Order, I held that Kodak's communications with DuPont in 1995 constituted effective notice of infringement with respect to the product Cronex 10T. I declined to hold that the communications constituted notice of infringement with respect to Cronex 10TL, because it was unclear from the record before the court at that time whether or not Cronex 10TL was merely a variation of Cronex 10T, and therefore notice as to Cronex 10T would be effective as to Cronex 10TL, or whether the products were materially different so that notice as to Cronex 10T could not reasonably be deemed as notice to Cronex 10TL.

Agfa now moves for summary judgment on the issue of notice with respect to Cronex 10TL arguing that because Cronex 10TL is significantly different from Cronex 10T, notice of infringement as to Cronex 10T was ineffective as against Cronex 10TL. In support of this argument, Agfa asserts that Cronex 10T is a "gradient" film whereas Cronex 10TL is a "latitude" film. Agfa argues that the

6

films have different purposes and different qualities, and that the t-grains used in the films are significantly different.

Kodak counters that Agfa itself considers Cronex 10T and Cronex 10TL to be "sister" products. Kodak submits evidence that the films are virtually identical in several aspects, and utilize the same type of allegedly infringing t-grains.

The question whether the differences between Cronex 10T and Cronex 10TL sufficiently distinguish the products from one another for purposes of notice is a question of fact that must be resolved by the trier of fact upon proof at trial. The record reveals that while there are significant similarities between the films, there are differences in the compositions of the films. It is for the trier of fact to determine whether or not the differences in the films are material to the issue of notice. Accordingly, I deny the parties' motions for summary judgment on the issue of notice with respect to Cronex 10TL.

II. <u>Laches</u>

A. <u>Legal Standards regarding the Doctrine of Laches</u>

To establish the defense of laches, the alleged infringer of a patent must establish by a preponderance of the evidence that: (1) the patent owner unreasonably and inexcusably delayed filing suit for infringement; and (2) that the alleged infringer has been

materially prejudiced by the delay. <u>A.C. Aukerman Co. v. R.L. Chaides Construction Co.</u>, 960 F.2d 1020, 1032 (Fed. Cir. 1992). Generally, the determination of whether or not the doctrine of laches bars recovery in a patent case is a question of fact. <u>See e.g.</u>, <u>Hemstreet v. Computer Entry Systems Corp.</u>, 972 F.2d 1290, 1292 (Fed. Cir. 1992) (finding that defenses of laches and estoppel ultimately turn on underlying factual determinations).

    B.   <u>Questions of fact preclude granting Defendant's motion for summary judgment</u>.

Agfa contends that with respect to Cronex 10T and Cronex 10TL, Kodak, as of June, 1996, possessed the information which it believed supported its case for infringement, and therefore knew or should have known by no later than June, 1996, that Agfa's products allegedly infringed upon Kodak's patents. Agfa contends that the delay of over six years in bringing the instant infringement action was unreasonable, and prejudiced Agfa in several ways. For example, Agfa contends that Kodak's delay has prevented Agfa from being able to properly defend itself, because many of the allegedly infringing film samples have been destroyed, and thus are unavailable for testing. Agfa also contends that the delay in bringing this action prejudiced Agfa because Agfa was unaware of Kodak's potential infringement claims when it purchased Sterling, the maker of Cronex 10T and Cronex 10TL. Agfa contends that had it

known that Kodak believed that these products infringed upon Kodak's patents, it would have either abandoned its attempt to purchase Sterling, or would have purchased Sterling at a much lower price.

Kodak contends that it did not unreasonably delay bringing suit, and instead acted responsibly in fully investigating its claims prior to bringing this infringement action. Specifically, Kodak argues that after initially discussing the alleged infringement with DuPont in 1995, it accepted DuPont's representation that DuPont would change its formulation of Cronex 10T so that Cronex 10T would not infringe upon Kodak's patents. Kodak contends that it thereafter tested Cronex 10T, and found that it did not literally infringe its patents.

Kodak argues, however, that sometime in the late 1990's, Sterling, without notifying Kodak, changed the formulation of Cronex 10T, and that Kodak's internal testing revealed that Cronex 10T was again infringing upon Kodaks t-grain patents.  Kodak asserts that the change in the formulation was counter to DuPont's earlier representation that it would manufacture Cronex 10T in such a way as to not infringe Kodak's patents. Kodak contends that it brought the alleged infringement to Agfa's attention during licensing talks in 2000, but that the parties were unable to negotiate a licensing agreement. Finally, Kodak argues that even if it did improperly delay bringing the instant action, Agfa cannot

9

demonstrate that it was prejudiced by such a delay. In support of this argument, Kodak contends that Agfa, inter alia, destroyed samples of allegedly infringing products when it received notice from Kodak that those products infringed Kodak's patents. Accordingly, Kodak argues that the lack of samples is a result of Agfa's actions and not because of Kodak's delay.

I find that there are questions of fact as to whether or not Kodak unreasonably delayed bringing this suit against Agfa. While Agfa contends that Kodak became aware of the alleged infringement in 1996, Kodak contends that Sterling changed the formulation of Cronex 10T thereafter, and that Kodak took reasonable and timely steps to investigate and subsequently notify Agfa of the alleged infringement. Thus, there are material issues of fact which prevent the court, on a motion for summary judgment, from ruling that as a matter of law, Kodak's delay was either reasonable or unreasonable, and if unreasonable, whether or not Agfa was prejudiced as a result of the delay.

### III. Kodak's Motion for Attorney's Fees

Kodak seeks attorney's fees with respect to its defense of Agfa's motion for summary judgment on the issue of laches. Because Agfa's motion is neither frivolous nor made in bad faith, I deny Kodak's motion for fees and costs.

CONCLUSION

For the reasons set forth above, I deny Agfa's April 11, 2006 motions for summary judgment (docket nos. 185 and 187), deny Kodak's cross motion for summary judgment (docket no. 204), and deny Kodak's motion for attorney's fees. (docket no. 205).

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated: Rochester, New York
July 11, 2006